UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FELICIA JOHNSON, | : | CIVIL ACTION NO. |
|    Plaintiff | : | 3:17-cv-2018-WWE |
| | : | |
| v. | : | |
| | : | |
| THE CARTWRIGHT LIMITED | : | |
| PARTNERSHIP I d/b/a CENTRAL FORD- | : | |
| MERCURY, | : | MARCH 14, 2018 |
|    Defendant | : | |
| | : | |

## AMENDED COMPLAINT

### I. INTRODUCTION

1.  This is a suit brought by a consumer regarding the purchase and sale, and repossession, of a motor vehicle. Plaintiff brings this action to recover actual, statutory, and punitive damages, reasonable attorney's fees, and costs from the defendant, The Cartwright Limited Partnership I d/b/a Central Ford-Mercury ("Central Ford"), for engaging in unfair trade practices, including a "yo-yo" sale of a motor vehicle, also known as a spot delivery. The illegal, unfair and deceptive actions engaged in consisted of offering financing with Central Ford acting as the creditor, upon Plaintiff's acceptance of this offer, delivering possession of the vehicle to the Plaintiff, then demanding the return of the vehicle, and requiring that she enter into a new contract with different terms as a condition of retaking possession, then repossessing the vehicle.

2.  Plaintiff alleges that Central Ford's conduct violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Credit Repair Organization Act ("CROA"), 15

U.S.C. § 1679 *et seq.* (the "CROA"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §42-110a *et seq.* ("CUTPA"), the provisions of the Connecticut Retail Installment Sales Financing Act, Con. Gen. Stat. § 36a-785 *et seq.* ("RISFA"), and Article 9 of the Uniform Commercial Code ("UCC"), Conn. Gen. Stat. §§ 42a-9-101 *et seq*.

## II. PARTIES

3. Plaintiff, Felicia Johnson ("Plaintiff") is a consumer and natural person residing in Norwich, Connecticut.

4. Defendant, Central Ford, is a Connecticut limited partnership that operates an automobile dealership in Plainfield, Connecticut.

## III. JURISDICTION

5. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. This court has jurisdiction over Central Ford because it is a Connecticut company that regularly conducts business in this state.

7. This court has jurisdiction over RAC because it regularly conducts business in this state.

8. Venue in this court is proper, because the Plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

## IV. FACTUAL ALLEGATIONS

9. Central Ford, as part of its regular business practice, sells vehicles to consumers who require financing.

10. Consumers who finance their purchases have two options. They can either obtain financing directly from a lender and give the loan proceeds to Central Ford, who would treat the transaction as a cash purchase or, they can finance their purchases by entering into retail installment contracts directly with Central Ford.

11. Central Ford generally does not retain possession of the retail installment contracts, but instead it assigns the contracts to third party banks or finance companies, who pay Central Ford.

12. Generally, prior to providing a consumer with a retail installment contract and prior to delivering possession of a vehicle to a consumer, Central Ford will obtain an agreement from a bank or finance company that it will accept assignment of the retail installment contract.

13. Occasionally, Central Ford is unable to obtain a firm commitment to accept assignment of a vehicle at the time that a consumer is ready and willing to proceed with a financed purchase.

14. In some instances, in order to avoid losing the sale, Central Ford will provide a consumer with a retail installment contract in the hope that any conditions for the extension of credit have been satisfied and that it will subsequently assign the contract to a finance company.

15. In those instances, Central Ford has a general business practice of seeking to bind the consumer to the transaction even though it does not intend to honor the retail installment contract if it is unable to assign it to a third party.

16. Prior to May 29, 2017, Central Ford advertised a new 2017 Ford Escape for an MSRP price of $24,645 and a sale price of $18,749.

17.     On or about May 29, 2017, Plaintiff went to Central Ford because she was interested in purchasing a vehicle.

18.     Plaintiff met with Central Ford sales person Judith Mcewan ("Mcewan"), and she told Judy that she was employed on a seasonal basis and that she also worked for a hospital.

19.     Mcewan showed Plaintiff a new 2017 Ford Escape (the "Vehicle").

20.     At the time Plaintiff was shown the Vehicle, it did not have a Monroney sticker on the windshield.

21.     Plaintiff completed a credit application, and Mcewan told her the application was approved.

22.     Plaintiff agreed to purchase the Vehicle from Central Ford.

23.     Plaintiff traded in a 2010 Hyundai Accent and was given a net trade-in allowance of $1,655.00.

24.     Central Ford prepared a Purchase Order that listed a sale price of $28,545.00, an amount that was $3,900 more than the manufacturer suggested retail price ("MSRP") of the Vehicle as listed on the Vehicle's Monroney sticker and nearly $10,000 greater than the advertised price.

25.     The Purchase Order included a rebate of $3,900 and a net trade-in allowance of $1,655.00 on Plaintiff's Hyundai.

26.     Plaintiff financed a balance of $26,408.15 pursuant to a retail installment contract (the "Contract") that referenced an assignment to Regional Acceptance Corporation ("RAC").

27. The Contract provided for 72 monthly installments of $546.40 commencing July 13, 2017.

28. Central Ford agreed to transfer the registration from Plaintiff's trade-in Hyundai to the new Vehicle, but it was approximately 6:00 p.m. by the time Plaintiff was approved for financing, and Mcewan told Plaintiff that she had to take delivery of the Vehicle on dealer plates and Central Ford would hold her license plates that were on the Hyundai until the dealership was able to transfer the registration.

29. On information and belief, this was a deceptive statement, and Central Ford had refrained from registering the Vehicle because it was uncertain whether it would be able to assign the retail installment contract.

30. Plaintiff took delivery of the Vehicle on dealer plates on May 29, 2017.

31. Although Central Ford may have intended to assign the Contract to RAC at the time it prepared the Contract and had Plaintiff execute the Contract, it was unable to assign the Contract either to RAC or to any other bank or finance company.

32. On or about June 2, 2017, Plaintiff received a call from Central Ford stating that the Contract had an old address that it had taken from Plaintiff's registration, and it needed Plaintiff to sign a new Contract.

33. Plaintiff received another call from Judy at Central Ford that same day stating that the problem was resolved and Plaintiff did not need to sign another contract.

34. Later in the day on or about June 2, 2017, Jamie, the finance manager at Central Ford, called Plaintiff again and told her the bank denied the loan after they contacted Plaintiff's employer and learned Plaintiff is employed as a seasonal employee.

5

35. Jamie asked Plaintiff to contact her employer and "remove her seasonal status" so that the Contract could be assigned.

36. Plaintiff believes, and therefore alleges, that Central Ford provided false information to RAC regarding her income. Specifically, Central Ford misrepresented the length and nature of Plaintiff's employment by stating Plaintiff worked at her employer for 2 years when in fact she had worked only for 2 months and her employment was seasonal.

37. Jamie also told Plaintiff that Central Ford had another bank that could approve the loan if Plaintiff paid an additional $2,500 down.

38. Plaintiff told Jamie she did not have an additional $2,500 to put down towards the car, and Jamie told Plaintiff she would need to bring the Vehicle back to Central Ford.

39. On or about June 5, 2017, Plaintiff sent a text message to Judy and asked her if she could make her payments to Central Ford since the dealership was listed as the Creditor/Seller on the Contract.

40. Judy responded to Plaintiff's text message that Plaintiff could not make payments to Central Ford, and that she needed to pay $2,500 or return the Vehicle that day.

41. On or about June 5, 2017, Central Ford repossessed the Vehicle from Plaintiff, and Plaintiff retrieved her Hyundai trade-in.

42. Plaintiff's Hyundai had been damaged by Central Ford including a crack on the passenger side rear door and damage to the rubber on the front windshield; the vehicle's check engine light was also illuminated.

43. Plaintiff was ready, willing, and able to make payments under the Contract, but Central Ford refused to accept payments.

44. Central Ford refused payments under the Contract and retook possession of the Vehicle because it did not want to be bound by the Contract that it had entered into with Plaintiff due to its inability to assign the Contract to a third party lender.

45. On or before October 25, 2017, Central Ford re-sold the Vehicle.

46. Central Ford has not provided Plaintiff with any notices in connection with the repossession or sale of the Vehicle.

## V.     CAUSES OF ACTION

### A. TRUTH IN LENDING ACT

47. To the extent that the extension of credit to Plaintiff was conditional, Central Ford violated TILA because it understated the Annual Percentage Rate, in that the monthly payments presume the extension of credit as of the date of the contract.

48. Additionally, on information and belief, the purchase price of the Vehicle was increased to compensate Central Ford for a discount fee charged that it anticipated would be charged by RAC for accepting assignment of the Contract.  Consequently, a portion of the increased price was due to the extension of credit and would not have been added to the purchase price in a comparable cash transaction.

49. This portion of the increased price constituted a finance charge but was improperly included as part of the amount financed.

50. Central Ford is liable to Plaintiff for her actual damages pursuant to 15 U.S.C. § 1640(a)(1), plus statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3).

### B.  CREDIT REPAIR ORGANIZATIONS ACT

51.  By providing false information to RAC in connection with Plaintiff's credit application, Central Ford violated the CROA, 15 U.S.C. § 1679b(a)(1), which prohibits any person from making any statement that is untrue or misleading with respect to any consumer's credit worthiness, credit standing, or credit capacity to any person to whom the consumer has applied or is applying for an extension of credit.

52.  Central Ford is liable to Plaintiff for her actual damages, punitive damages, and attorney's fees pursuant to 15 U.S.C. § 1679g.

### C.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

53.  The actions of Central Ford in representing to Plaintiff that she had been approved for financing on the purchase of the Vehicle, then delivering the possession of the Vehicle to Plaintiff, and then repossessing the Vehicle, and its other conduct as previously alleged, constituted unfair and deceptive acts in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*

54.  Central Ford further violated CUTPA in the following ways:

   a. Its violations of TILA or the policies underlying TILA as aforesaid;

   b. To the extent that Central Ford did not extend credit to Plaintiff, its delivery of the Vehicle to Plaintiff when financing had not been approved by RAC was a violation of Conn. Gen. Stat. § 14-62(h) and a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(23);

   c. It sold the Vehicle for more than the MSRP price and the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-

        28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertise price;

    d. Upon information and belief, it provided false information to RAC about the Plaintiff's employment, in order to induce RAC to accept assignment of the Contract; and

    e. It removed the Monroney sticker on the Vehicle and did not have it displayed as required by law.

55. Central Ford's conduct, as aforesaid, was deceptive and unfair and in violation of CUTPA, and it has caused Plaintiff to suffer ascertainable losses and damages in that she lost the use of the Vehicle and her trade-in vehicle was returned to her damaged.

56. For Central Auto's violations of CUTPA, Plaintiff seeks actual damages, punitive damages, and a reasonable attorney's fee and costs.

### D. CONNECTICUT RETAIL INSTALLMENT SALES FINANCE ACT

57. Central Ford's conduct in repossessing the Vehicle when Plaintiff was not in breach constituted a violation of the repossession provisions of RISFA, Conn. Gen. Stat. § 36a-785(a).

58. Central Ford failed to provide Plaintiff with either the pre-repossession notice permitted under Conn. Gen. Stat. § 36a-785(b) or the post-repossession notice of the right of reinstatement required under Conn. Gen. Stat. § 36a-785(c) when no pre-repossession notice has been provided.

59. Central Ford re-sold the Vehicle without providing Plaintiff written notice of the intended disposition required under Conn. Gen. Stat. § 36a-785(d).

60. Central Ford failed to provide Plaintiff with notice of the disposition of the proceeds of the sale of the Vehicle and failed to account to her for any surplus, in violation of Conn. Gen. Stat. § 36a-785(e).

61. Plaintiff is entitled to the greater of her actual damages or 25% of the amount paid under the Contract pursuant to Conn. Gen. Stat. § 36a-785.

### E.  UNIFORM COMMERCIAL CODE ARTICLE 9

62. Central Ford violated Article 9 of the UCC by repossessing the Vehicle when Plaintiff was not in default.

63. Central Ford disposed of the Vehicle and failed to provide Plaintiff with written notice of the date and time of the public disposition of her vehicle or, if the disposition was by private sale, with notice that disposition would be by private sale and the date after which a private disposition would take place, as required by Conn. Gen. Stat. § 42a-9-613 and § 42a-9-614.

64. Plaintiff is entitled to the greater of her actual damages or 10% of the amount financed plus the finance charge pursuant to Conn. Gen. Stat. § 42a-9-625(c)(2).

### F.  BREACH OF CONTRACT

65. Central Ford's refusal to accept payments under the Contract and its subsequent repossession of the Vehicle constituted a Breach of Contract, and it is liable to Plaintiff for damages.

### G.  NEGLIGENCE

66. Central Ford owed a duty of care to Plaintiff to properly maintain her trade-in vehicle until proper financing could be obtained.

67. Central Ford acted negligently by causing damage to Plaintiff's trade-in vehicle.

68. Central Ford is liable to Plaintiff for her damages.

**Wherefore,** Plaintiff claims actual damages, statutory damages under TILA of $2,000, statutory damages under RISFA, statutory damages under the UCC, punitive damages under CUTPA, and attorney's fees and costs.  Plaintiff also claims such other relief to which Plaintiff is entitled at law or in equity.

                               PLAINTIFF, FELICIA JOHNSON

                               By: /s/ *Daniel S. Blinn*
                                  Daniel S. Blinn, ct02188
                                  Consumer Law Group, LLC
                                  35 Cold Spring Rd. Suite 512
                                  Rocky Hill, CT  06067
                                  Tel. (860) 571-0408
                                  Fax. (860) 571-7457
                                  dblinn@consumerlawgroup.com

## CERTIFICATION

I hereby certify that on this 14th day of March, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

   /s/ *Daniel S. Blinn*
   Daniel S. Blinn